Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Sourabh Mishra, State Bar No. 305185
smishra@hueston.com
Emily Minton Mattson, State Bar No. 330091
emattson@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Defendants
AMAZON.COM, INC., AMAZON.COM
SERVICES LLC, and AMAZON ADVERTISING
LLC,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET GREEN CARTRIDGES, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; AMAZON ADVERTISING LLC, a Delaware limited liability company; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 2:23-cv-06647-JFW(KS)<br><br>Hon. John F. Walter<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE**<br><br>Hearing Date: October 23, 2023<br>Hearing Time: 1:30 p.m.<br>Courtroom: 7A |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................4

III.  LEGAL STANDARD .............................................................................6

IV.  ARGUMENT .........................................................................................6

     A.    Section 230 Bars Plaintiffs' Claims ......................................7

          1.    Amazon is an Interactive Computer Service Provider ..............8

          2.    Planet Green Treats Amazon as a Publisher and Speaker..........9

          3.    Third Parties, Not Amazon, Provided the Alleged False Advertising Content.................................................11

     B.    Planet Green Fails to Identify Any False Statement of Fact by Amazon to Support Any of Its Claims............................18

     C.    Planet Green's Common-Law Unfair Competition Claim (Count 2) Must Be Dismissed Because It Does Not Allege that Amazon "Passed Off" Trade Names or Trademarks...................20

     D.    Planet Green Cannot Recover Disgorgement, Restitution, or Civil Penalties Under Its UCL (Count 3) and FAL (Count 4) Claims ..................................................20

V.   CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*AdvanFort Co. v. Cartner*,
2015 WL 12516240 (E.D. Va. Oct. 30, 2015)..........................................................18

*Almeida v. Amazon.Com, Inc.*,
2004 WL 4910036 (S.D. Fla. July 30, 2004)..............................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................6

*Austin v. Budget Rental Car, Inc.*,
2020 WL 8614183 (N.D. Cal. Sept. 17, 2020) ...........................................................1

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
624 F. App'x 81 (4th Cir. 2015)* ..............................................................................19

*Bank of the W. v. Superior Ct.*,
2 Cal. 4th 1254 (1992) ..............................................................................................20

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..........................................................................8, 9, 10

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ..............................................................................3, 17

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019) ......................................................................................6

*Bennett v. Google, LLC*,
882 F.3d 1163 (D.C. Cir. 2018)................................................................................13

*Black v. Google Inc.*,
2010 WL 3222147 (N.D. Cal. Aug. 13, 2010) .........................................................15

*Breazeale v. Victim Servs., Inc.*,
878 F.3d 759 (9th Cir. 2017) ......................................................................................3

*Bride v. Snap Inc.*,
  2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ............................................ 10

*Brodie v. Green Spot Foods, LLC*,
  503 F. Supp. 3d 1 (S.D.N.Y. 2020) ............................................ 2, 11, 18

*Calise v. Meta Platforms, Inc.*,
  2022 WL 1240860 (N.D. Cal. Apr. 27, 2022) .................................... 11, 12

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .................................................. 7, 13

*Casillas v. Northgate Gonzalez Mkts., Inc.*,
  2016 WL 10966424 (C.D. Cal. May 11, 2016) .............................. 4, 21, 22

*Cedars-Sinai Med. Ctr. v. United Healthcare Ins. Co.*,
  2010 WL 1875556 (C.D. Cal. May 7, 2010) .................................... 4, 22

*Coffee v. Google, LLC*,
  2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ........................................ 12

*Communication Systems, Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) .................................................. 10, 14

*Corker v. Costco Wholesale Corp.*,
  2019 WL 5895430 (W.D. Wash. Nov. 12, 2019) .............................. 3, 18, 19

*Dart v. Craiglist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ............................................ 13

*Dimeo v. Max*,
  433 F. Supp. 2d 523 (E.D. Pa. 2006) ............................................ 18

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) .................................................... 10

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) .............................................. Passim

*Estate of Morris v. Bank of N.Y. Mellon*,
  856 F. App'x 669 (9th Cir. 2021) ................................................ 1

- iii -

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ...................................................2, 9, 13, 15

*Federal Trade Commission v. Match Grp., Inc.,*
2022 WL 877107 (N.D. Tex. Mar. 24, 2022) ..........................................14

*Ginsberg v. Google Inc.,*
586 F. Supp. 3d 998 (N.D. Cal. 2022) .....................................................10

*Goddard v. Google, Inc.,*
640 F. Supp. 2d 1193 (N.D. Cal. 2009) .........................................7, 12, 17

*Goddard,*
2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .........................................15

*Green v. Am. Online,*
318 F.3d 465 (3d Cir. 2003) ..............................................................10, 13

*Hawaii Foodservice All., LLC v. Meadow Gold Dairies Hawaii, LLC,*
2023 WL 159907 (D. Hawaii Jan. 11, 2023) ...........................................19

*In re Outlaw Lab., LP Litig.,*
424 F. Supp. 3d 973 (S.D. Cal. 2019) ......................................................19

*Jerome's Furniture Warehouse v. Ashley Furniture Indus, Inc.,*
2021 WL 148063 (S.D. Cal. Jan. 15, 2021) .............................................20

*Kasky v. Nike, Inc.,*
27 Cal.4th 939 (2002) ..............................................................................22

*Kimzey v. Yelp! Inc.,*
836 F.3d 1263 (9th Cir. 2016) ......................................................8, 11, 17

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) .....................................................................21, 22

*L.W. through Doe v. Snap, Inc.,*
2023 WL 3830365 (S.D. Cal. June 5, 2023) ...................................7, 10, 16

- iv -

*Lasoff v. Amazon.com, Inc.*,
2017 WL 372948 (W.D. Wash. Jan. 26, 2017) .............................................3, 16, 19

*McCarthy v. Amazon.com, Inc.*,
2023 WL 4201745 (W.D. Wash. June 27, 2023) ......................................................9

*McMillan v. Amazon.com, Inc.*,
433 F. Supp. 3d 1034 (S.D. Tex. 2020) ...................................................................11

*McMillan v. Amazon.com, Inc.*,
2 F.4th 525 (5th Cir. 2021) ......................................................................................11

*Morton v. Twitter, Inc.*,
2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ...........................................................7

*Optimum Techs., Inc. v. Home Depot USA, Inc.*,
2005 WL 3307508 (N.D. Ga. Dec. 5, 2005)............................................................19

*Outlaw Lab., LP v. Shenoor Enter.*,
371 F. Supp. 3d 355 (N.D. Tex. 2019) ....................................................................19

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ...................................................................................7

*Prager Univ. v. Google LLC*,
85 Cal. App. 5th 1022 (2022) .....................................................................................8

*Rave Wonderland, Inc. v. City Lingerie, Inc.*,
2019 WL 6792808 (C.D. Cal. Sept. 11, 2019) .....................................................4, 21

*Sen v. Amazon.com, Inc.*,
2018 WL 4680018 (S.D. Cal. Sept. 28, 2018)...........................................................8

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) .................................................................................20

*spinTouch, Inc. v. Outform, Inc.*,
2021 WL 6103549 (C.D. Cal. Nov. 8, 2021) ..........................................................22

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .............................................................................3, 20

*Tortilla Factory, LLC v. Trader Joe's Co.*,
  2018 WL 8367468 (C.D. Cal. Oct. 11, 2018)............................................................21

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) .......................................................................2, 10, 14

<u>Statutes</u>

47 U.S.C. § 230...........................................................................................passim

Cal. Bus. & Prof. Code § 17203 ...............................................................22

Cal. Bus. & Prof. Code § 17535 ...............................................................22

# I.      INTRODUCTION

Plaintiff Planet Green Cartridges, Inc. ("Planet Green") claims that third-party sellers are deceiving unidentified customers by producing and selling ink cartridges made in China that the third parties allegedly falsely claim are "remanufactured" or "recycled."   Consequently, Planet Green seeks "not less than *$500 million*" in damages.

But even accepting Planet Green's allegations as true, Planet Green has sued the wrong party.  For reasons unknown, Planet Green has decided not to sue the actual third-party sellers of the goods it claims are falsely advertised.  Instead, it asserts claims against Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Advertising LLC.  Referring to the three entities together as just "Amazon,"[1] Planet Green claims that Amazon is responsible for its claims because Amazon allows the third-party sellers to list items on Amazon.com.  It also complains that Amazon has not done enough yet to edit or remove the alleged false advertising by the third-party sellers.  Planet Green thereby asserts false advertising claims against Amazon as if it created the false statements at issue.

Setting aside its rhetoric, the Complaint should be dismissed for straight-forward and well-established reasons.

*First*, courts have long held that a plaintiff cannot hold a website operator or retailer responsible for statements created by third parties.  Section 230 of the Communications Decency Act, which applies here, bars all of Planet Green's claims.

---

[1] Planet Green's Complaint violates the prohibition against group pleading by failing to allege specific acts taken by *each* Defendant. *See, e.g.*, *Estate of Morris v. Bank of N.Y. Mellon*, 856 F. App'x 669, 671-72 (9th Cir. 2021) ("We [] affirm on the ground that appellants failed sufficiently to allege which defendants committed which acts of discrimination."); *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. Sept. 17, 2020) (dismissing claims because "[w]hen defendants are separate corporate entities[] and perform separate roles," pleading as to defendants generally "is insufficient to state a claim for relief").  Because Planet Green alleges acts taken by "Amazon" generally, this Motion uses the same terminology.

Website operators like Amazon "are immune from liability for third-party information (or content []), unless the website operator 'is responsible, in whole or in part, for the creation or development of [the] information.'" *Dyroff v. Ultimate Software Grp., Inc., 934 F.3d 1093, 1096-97 (9th Cir. 2019)* (quoting 47 U.S.C. §§ 230(c)(1) & (f)(3)). Planet Green here *admits* that the listings-at-issue, upon which its entire Complaint is based, are created by *third parties*.  (*E.g.*, Complaint ¶ 20 ("[Third party] Sheengo depicts its box to look like a Canon box and claims to be remanufactured.").)  Because Amazon did not create any of the false statements at issue, section 230 immunizes Amazon from liability arising out of those product listings.  *See Brodie v. Green Spot Foods, LLC, 503 F. Supp. 3d 1, 11-12 (S.D.N.Y. 2020)* (dismissing claim against Amazon for third-party advertising and noting that courts around the country have "barred claims against Amazon for permitting injurious or prohibited products on its platform without adding warnings" (citing cases).)

Planet Green's efforts to escape section 230 are all unavailing.  It alleges that section 230 does not apply because Amazon has policies against false advertising.  But the existence of policies governing content is insufficient to defeat section 230 immunity.  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1171-72 (9th Cir. 2008)* (though "defamatory posting was contrary to the website's express policies," "fail[ing] to review" the content "is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230").  Likewise, Planet Green's allegation that Amazon had a duty to act because Planet Green put Amazon on notice of the alleged false advertising does not defeat section 230 liability because "[l]iability upon notice would defeat the dual purposes advanced by § 230." *Zeran v. Am. Online, Inc., 129 F.3d 327, 333 (4th Cir. 1997)* (rejecting notice argument as an exception to section 230 immunity).  Planet Green also highlights Amazon's use of algorithms, but the algorithms are content-neutral actions immunized under section 230.  *Dyroff, 934 F.3d at 1098* (section 230 applies even though defendant "used features and functions, including algorithms, to analyze

user posts [] and recommend[] other user groups").  Finally, it is not relevant that Amazon may *resell returned ink cartridges* on its "Amazon Warehouse" page because it simply reuses product listings provided by third-party sellers, Amazon does not develop that information itself.  *See Batzel v. Smith, 333 F.3d 1018, 1031 (9th Cir. 2003)* ("[T]he exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message."), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc., 878 F.3d 759, 766-67 (9th Cir. 2017).*

*Second*, Planet Green has not alleged that Amazon itself made any "false statement of fact" as required to maintain its claims.  *Corker v. Costco Wholesale Corp., 2019 WL 5895430, at *2 (W.D. Wash. Nov. 12, 2019).*  Since Planet Green does not claim that Amazon manufactures, produces, or packages the ink cartridges at issue, it does not make a false statement of fact by simply "put[ting] the third-party vendor's product on [its] websites." *Id.*  Where a plaintiff alleges that the retailer reuses product descriptions from the manufacturer, courts routinely dismiss false advertising claims.  *See, e.g., Lasoff v. Amazon.com, Inc., 2017 WL 372948, at *8 (W.D. Wash. Jan. 26, 2017)* (holding that where the misrepresentation of which plaintiff complains originated with a third party, the liability for the false representations lies with the third party, not with the retailer who depicts what is for sale on its website).

*Third*, Planet Green cannot maintain its common-law unfair competition claim (Count 2) because it does not allege that Amazon has passed off its goods using Planet Green's trade names or trademarks.  *See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008)* (no liability for common-law unfair competition where plaintiff did not allege that defendants "passed off their goods as those of another nor that they exploit trade names or trademarks").

*Fourth*, even if Planet Green could maintain its Unfair Competition Law (Count 3) and False Advertising Law (Count 4) claims, its requests for disgorgement, civil penalties, and restitution must be dismissed and/or stricken. *See Rave Wonderland, Inc. v. City Lingerie, Inc.*, 2019 WL 6792808, at *3-4 (C.D. Cal. Sept. 11, 2019) ("Courts are split with respect to whether [striking a sought-for remedy] is best suited for a 12(b)(6) motion to dismiss or a 12(f) motion to strike."). "Nonrestitutionary disgorgement is not available under the UCL" or FAL. *Casillas v. Northgate Gonzalez Mkts., Inc.*, 2016 WL 10966424, at *3 (C.D. Cal. May 11, 2016). Nor are civil penalties for a "private plaintiff" like Planet Green. *Cedars-Sinai Med. Ctr. v. United Healthcare Ins. Co.*, 2010 WL 1875556, at *6-7 (C.D. Cal. May 7, 2010). And because Planet Green does not "seek[] the return of money or property that was once in its possession," it cannot obtain restitution either. *Casillas*, 2016 WL 10966424, at *3 (cleaned up).

Amazon requests that the Court dismiss Planet Green's Complaint in its entirety with prejudice. Alternatively, Amazon requests that the Court dismiss the common-law unfair competition claim and strike or dismiss the improper prayers for relief.

## II.   BACKGROUND

Planet Green alleges that "Amazon.com, Inc. markets and sells products to retail consumers all over the world through internet websites such as www.amazon.com." (Complaint ¶ 6.) Amazon.com Services LLC supposedly "sells products to consumers through Amazon Warehouse that are fulfilled by Amazon.com." (*Id.* ¶ 7.) And Amazon Advertising LLC allegedly "provides advertising services to third party sellers." (*Id.* ¶ 8.) Though Planet Green sues three separate entities, its substantive allegations refer to all three together as "Amazon." (*E.g.*, *id.* ¶ 28 ("Amazon sells millions of purported remanufactured ink cartridges that originate from China.").)

Planet Green claims that it sells "remanufactured ink cartridges." (Complaint ¶ 15.) Planet Green says that it engages in a process of "obtaining used OEM cartridge cores, thoroughly inspecting, cleaning, refilling the cartridges with new ink, testing for

quality control, and packaging for resale." (*Id.*)  Screenshots in the Complaint show that Planet Green does business as "DoorstepInk." (*Id.* ¶ 52.)  As DoorstepInk, Planet Green sells products on Amazon's website (Declaration of Sourabh Mishra ("Mishra Decl.") Ex. 1); and has a business account it uses to buy products from Amazon (Complaint ¶ 52 (screenshot showing DoorstepInk's "amazon business" account)).[2]

The gravamen of Planet Green's Complaint is that third-party sellers sell ink cartridges on Amazon's website that they falsely advertise as "remanufactured" or "recycled."  (Complaint ¶ 1.)  Planet Green admits that Amazon did not create the product listings with the alleged false statements.  (*Id.* ¶ 35 (admitting that product descriptions on Amazon's website are "third-party seller listings").)

However, Planet Green claims that Amazon is liable for false advertising because it allegedly "approves seller listings, accepts possession of products, and stores [the products] in its warehouses, attracts the customer to the Amazon website using third-party seller listings, provides customers with product listings for their searches, processes customer payments for the product, and ships products in Amazon packaging to customers." (*Id.*)  Additionally, Amazon supposedly "controls all customer service and returns and responds directly to consumers who leave negative reviews for products fulfilled by [Amazon]." (*Id.* ¶ 38.)  Planet Green also alleges Amazon labels some products as "Amazon's Choice" and resells *returned* third-party products on its Amazon Warehouse page.  (*Id.* ¶¶ 48, 50.)

Planet Green acknowledges that, once it notified Amazon of allegedly false statements by third parties, Amazon took steps to investigate those product listings.  (*Id.* ¶ 64.)  For example, Amazon "asked sellers to substantiate their claims about

---

[2] Due to these relationships, Planet Green is subject to the Amazon Seller Business Services Agreement ("BSA") and Amazon Conditions of Use ("CoU").  (Mishra Decl. Ex 2 (BSA) at 1, 13 (contract with Amazon.com Services LLC and "any of its applicable Affiliates"); *id.* Ex. 3 (CoU) at 1 (contract with "Amazon.com. Amazon.com Services LLC and/or its affiliates").)  Amazon expressly reserves all rights under all contracts governing its relationship with Planet Green.

selling remanufactured and environmentally responsible ink cartridges." (*Id.*) "Thirty-party sellers who couldn't substantiate their product were instructed to change their product listings." (*Id.*) Despite that, Planet Green complains that some sellers "were allowed to continue to sell" products even after changing their product listings. (*Id.*) And Planet Green claims that, despite allowing third parties to sell hundreds of millions of products on its website, Amazon should do more, faster, to resolve Planet Green's concerns about ink cartridges. (*Id.* ¶¶ 69-70.)

Planet Green asserts four claims against Amazon: a Lanham Act claim, a common-law unfair competition claim, a California Unfair Competition Law claim, and a California False Advertising Law claim. (*Id.* ¶¶ 72-101.)

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (cleaned up). The court must generally accept "well-pleaded factual allegations" as true but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79 (citation omitted).

## IV.   ARGUMENT

Planet Green's claims must be dismissed under section 230 of the Communications Decency Act and for failure to identify any false statement made *by* Amazon. Its common-law unfair competition fails for failure to plead any allegation that Amazon is passing off on Planet Green's name or mark. And, even if it could maintain its UCL and FAL claims, Planet Green cannot recover disgorgement, restitution, or civil penalties under either statute.

### A. Section 230 Bars Plaintiffs' Claims

Section 230 of the Communications Decency Act "provides that website operators are immune from liability for third-party information (or content []), unless the website operator 'is responsible, in whole or in part, for the creation or development of [the] information.'" *Dyroff*, 934 F.3d at 1096-97 (quoting 47 U.S.C. 230(c)(1) & (f)(3)). This immunity "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009) (cleaned up). Accordingly, "reviewing courts have treated § 230[] immunity as quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Courts thus apply section 230 to bar federal, state, and local claims at the motion-to-dismiss stage. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) ("The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." (cleaned up)); 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("[C]ourts aim to resolve the question of § 230 immunity at the earliest possible stage of the case so that defendants entitled to § 230 immunity are saved from having to fight costly and protracted legal battles." (cleaned up).)

Section 230 plainly applies to Planet Green's claims, all of which are based on allegations of false advertising due to third-party content. (Complaint ¶ 73 (alleging false advertising under section 1125(a) of the Lanham Act); *id.* ¶ 83 (alleging common-law unfair competition based on alleged wrongful false advertising); *id.* ¶ 88 (similar for statutory unfair competition claim); *id.* ¶ 99 (similar for California False Advertising Law claim).) Controlling Ninth Circuit authority holds that section 230 can bar false advertising claims. *Perfect 10*, 488 F.3d at 1118-19 (affirming dismissal of false advertising and unfair competition claims under section 230)*; see also L.W.*

1 *through Doe v. Snap, Inc.*, --- F. Supp. 3d ----, 2023 WL 3830365, at *2 (S.D. Cal.

2 June 5, 2023) (dismissing California False Advertising Law and unfair competition

3 claims pursuant to section 230); *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022,

4 1040-42 (2022) (dismissing unfair competition claim pursuant to section 230).

5      Section 230 "[i]mmunity from liability exists for '(1) a provider or user of an

6 interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or

7 speaker (3) of information provided by another information content provider.'"

8 *Dyroff*, 934 F.3d at 1097 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th

9 Cir. 2009)).  All three elements are easily met here.

10               1.   <u>Amazon is an Interactive Computer Service Provider</u>

11      The Ninth Circuit "interpret[s] the term 'interactive computer service'

12 expansively." *Id.* (citing *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016)).

13 "Websites are the most common interactive computer services." *Id.*

14      Here, Planet Green admits that Amazon "markets and sells products to retail

15 consumers all over the world *through internet websites*." (Complaint ¶ 6 (emphasis

16 added).)  It also admits that its allegations concern products "available for purchase on

17 *Amazon's website*." (*Id.* ¶ 17 (emphasis added); *id.* ¶ 32 ("sale of inauthentic printer

18 cartridges, advertised, sold, and distributed by Defendants through their website").)

19      Where, as here, a plaintiff admits that its allegations concern a defendant's

20 action or inaction relating to a website, the Ninth Circuit holds that the defendant

21 qualifies as a provider of an "interactive computer service." *See, e.g.*, *Dyroff*, 934 F.3d

22 at 1097 (defendant qualified under the first prong because plaintiff alleged that his son

23 "set up accounts on [] a website"); *Kimzey*, 836 F.3d at 1268 (holding that "Yelp is

24 plainly a provider of an 'interactive computer service'" because the allegations

25 concerned the operation of its website).

26      Indeed, every court that has considered this precise issue has held that Amazon

27 is a qualifying interactive computer service provider under section 230. *See, e.g.*, *Sen*

28 *v. Amazon.com, Inc.*, 2018 WL 4680018, at *5 (S.D. Cal. Sept. 28, 2018) ("[Amazon]

is undoubtedly a provider of 'interactive computer services.'"), *aff'd in part*, 793 F. App'x 626, 626-27 (affirming section 230 analysis); *Almeida v. Amazon.Com, Inc.*, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) ("It is irrefutable that Defendant Amazon is an "interactive computer service."), *aff'd*, 456 F.3d 1316 (11th Cir. 2006); *McCarthy v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2023 WL 4201745, at *8 (W.D. Wash. June 27, 2023) ("The court agrees . . . that Amazon is a provider of interactive computer services within the meaning of Section 230.").

Amazon thus satisfies the first prong of the section 230 analysis.

### 2.    Planet Green Treats Amazon as a Publisher and Speaker

The next element is whether the claims "inherently require[] the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1102. "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Id*. "If it does, section 230(c)(1) precludes liability." *Id*.

Indeed, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71. That is why the "[the Ninth Circuit] ha[s] indicated that publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1101-02.

Here, to establish liability, Planet Green necessarily seeks to treat Amazon as a publisher or speaker of the alleged false advertising. The crux of Planet Green's gripe is that Amazon "continue[s] to *allow* unlawful sellers to maintain their accounts" and "*permit[s]* them to advertise" on Amazon's website. (Complaint ¶ 3 (emphasis added); *id.* (Amazon "continue[s] to allow sellers that have deceived millions of consumers with its false advertising and recyclability claims to sell clone ink cartridges over

1  Amazon.")[3].)  Planet Green also alleges that Amazon improperly publishes third-party
2  seller listings through its Amazon Warehouse page.  (*Id.* ¶ 50 ("[I]f Defendants
3  reimburse a seller for any damaged, lost or returned product, Defendants can dispose
4  of any item or sell it on the Amazon Warehouse.").)

5       Accordingly, "the Court must treat [Amazon] as [a] publisher[] or speaker[],
6  regardless of how [Planet Green's] claims are framed, because [its] theories of liability
7  plainly turn on [Amazon's] alleged failure to monitor and remove third-party content."
8  *L.W.*, 2023 WL 3830365, at *4.  Indeed, courts routinely find that allegations that
9  defendants published or failed to remove offending content, including false
10  advertising, necessarily seek to hold defendants responsible as publishers.  *See, e.g.*,
11  *Barnes*, 570 F.3d at 1103-04 ("[R]emoving content is something publishers do, and to
12  impose liability on the basis of such conduct necessarily involves treating the liable
13  party as a publisher of the content it failed to remove."); *Ginsberg v. Google Inc.*, 586
14  F. Supp. 3d 998, 1004-05 (N.D. Cal. 2022) (holding that the failure to remove an
15  application from Google's Play Store "boils down to deciding whether to exclude
16  material [] that a third party seeks to place in the online Play Store"); *Bride v. Snap*
17  *Inc.*, 2023 WL 2016927, at *6 (C.D. Cal. Jan. 10, 2023) (section 230 applies where
18  plaintiff sought to hold defendant liable for false advertising based on the accusation
19  that they "should have monitored and curbed third-party content" (cleaned up)).[4]

20  _____

21  [3] (*See also* Complaint ¶ 19 ("Sellers are allowed to list multiple products claiming to
22  be remanufactured OEM cartridges, frequently bearing the 'recyclable' symbol, when
   in fact they are newly manufactured clone cartridges, not OEM product, and not in fact
23  a recycled or recyclable product."); *id.* ¶ 37 ("Below are screen shots of Amazon's
   specific ink and toner selling policies that Defendants are not enforcing, allowing for
24  deceptive product descriptions to rampantly take place across the category.").)

25  [4] Other circuits are in accord.  *See Zeran*, 129 F.3d at 330 (the Communications
26  Decency Act protects against liability for the "exercise of a publisher's traditional
   editorial functions—such as deciding whether to publish, withdraw, postpone or alter
27  content"); *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (same); *Univ.*
   *Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007) (same);
28  (Continued...)

In fact, numerous courts have found *Amazon* immune from liability based on alleged false advertising (or inaccurate listings) created by third parties. *See, e.g.*, *Brodie*, 503 F. Supp. 3d at 11-12 (dismissing false advertising claim against Amazon as a publisher and noting that allegations resemble "the typical case, in which plaintiffs seek to hold the interactive computer service liable for publishing the content of a third party" (cleaned up)); *McMillan v. Amazon.com, Inc.*, 433 F. Supp. 3d 1034, 1045 (S.D. Tex. 2020) ("[A]mazon cannot be held liable for taking insufficient precautions to prevent a third-party vendor from lying, or omitting information, about the defect or dangers of [a product]."), *rev'd on other grounds*, 2 F.4th 525 (5th Cir. 2021) (remanding with instructions to grant judgment for Amazon in full).

Planet Green's allegations thus satisfy element two of the section 230 analysis.

3.   Third Parties, Not Amazon, Provided the Alleged False Advertising Content

The last element examines *who* provided the content that allegedly gives rise to liability. *Dyroff*, 934 F.3d at 1098-1099. If a third party, and not the defendant, is responsible for the specific content at issue, section 230 bars the plaintiff's claims. *Id*.

Ninth Circuit cases "establish that a website may lose immunity under [section 230] by making a material contribution to the creation or development of content." *Kimzey*, 836 F.3d at 1269-70. "A 'material contribution' does not refer to merely augmenting the content generally, but to materially contributing to *its alleged unlawfulness*." *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *3 (N.D. Cal. Apr. 27, 2022) (emphasis added) (cleaned up).

The material contribution "test draws the line at the crucial distinction between, on the one hand taking actions to display actionable content, and on the other hand, responsibility for what makes the displayed content itself illegal or actionable." *Id*.

---

*Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (no liability for "decisions relating to the monitoring, screening, and deletion of content" by an interactive computer service provider).

(cleaned up).  "That is, immunity will be lost only when the website *contributes to the illegality* of the third-party content."  *Id.* (emphasis added).

Here, Planet Green has not alleged Amazon *created* any of the offending content at issue.  Instead, it expressly admits that the "seller listings" that contain the alleged false advertising are "third-party seller listings."  (Complaint ¶ 35.)  And it also concedes that Amazon had to contact *third parties* to change their product listings to remove the allegedly false content because the third party "sellers are [the ones who are] falsely advertising their listings, products, and packaging."  (*Id.* ¶ 16 ("18 brands and their numerous listings of aftermarket ink cartridges"); *Id.* ¶ 64 ("Third-party sellers who couldn't substantiate their product claims were instructed to change their product listings."); *id.* ("Below are before and after examples of listings by Sellers who were instructed by Defendants to change their product listings."); *id.* ¶ 20 ("[Third party] Sheengo depicts its box to look like a Canon box and claims to be remanufactured."); *id.* ¶ 24 ("Below is an example of how two brands, Greencycle and Inktopia, are creating multiple listings that saturate the platform"); *id.* ¶ 23 (claiming that 45 third-party brands are falsely advertising their products).)

Where, as here, the defendant does not contribute to the allegedly unlawful content, courts consistently dismiss claims under section 230.  *See, e.g.*, *Goddard*, 640 F. Supp. 2d at 1198-99 (section 230 immunized Google where it employed a "neutral tool" but did not create the "improper content"); *Coffee v. Google, LLC*, 2021 WL 493387, at *7-8 (N.D. Cal. Feb. 10, 2021) (section 230 immunized Google because plaintiff merely alleged "passive acquiescence in the misconduct of its users" (cleaned up))

Planet Green is well aware that its claims are barred by section 230.  And despite admitting that Amazon does not create the offending content, Planet Green offers three theories for why Amazon should be liable anyway.  Each has previously been rejected by courts and each fails here.

1
2

          *a)*     *Amazon's Creation of Listing Policies Is Not a Substantial Contribution*

3
4
5
6
7

Planet Green alleges that section 230 does not apply because Amazon "creat[es] listing *policies* for selling ink and toner [to] clearly distinguish between a 'remanufactured' and a 'compatible' ink cartridge." (Complaint ¶ 56 (emphasis added).) Planet Green reasons that since Amazon has policies, its alleged failure to enforce them creates liability.

8
9
10

This theory finds no support in the law. Instead, controlling Ninth Circuit authority rejects any argument that a defendant loses section 230 immunity by implementing policies but failing to enforce them:

11
12
13
14
15

> [T]he defamatory posting was contrary to the website's express policies. The claim against the website was, in effect, that it failed to review each user-created profile to ensure that it wasn't defamatory. That is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230. With respect to the defamatory content, the website operator was merely a passive conduit and thus could not be held liable for failing to detect and remove it.

16
17
18
19
20
21
22
23
24
25
26
27
28

*Roommates*, 521 F.3d at 1171-72 (discussing *Carafano*, 339 F.3d at 1122). Other courts are in accord that failing to remove content that violates defendant's policies does not defeat section 230 immunity. *See, e.g.*, *Bennett v. Google, LLC*, 882 F.3d 1163, 1167-68 (D.C. Cir. 2018) (section 230 bars claims against Google premised on Google's refusal to remove a user's blog post, in alleged violation of its "Blogger Content Policy"); *Green*, 318 F.3d at 472 (affirming dismissal because section 230 "allows AOL to establish standards of decency without risking liability for doing so"); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968-69 (N.D. Ill. 2009) (holding that defendant is immunized under section 230 and remarking "While we accept as true for

the purposes of this motion plaintiff's allegation that users routinely flout Craigslist's guidelines, it is not because Craigslist has caused them to do so").[5]

Likewise, Planet Green's allegation that it put Amazon on notice that the third-party product listings allegedly violate Amazon's policies and false advertising law does not change the section 230 analysis. (Complaint ¶ 16 ("Prior to the filing of this action, Plaintiff put Amazon on notice of the wrongful conduct alleged in this Complaint.").  As the Fourth Circuit in *Zeran*, the seminal case on this issue, held:

> If computer service providers were subject to distributor liability, they would face potential liability each time they receive notice of a potentially defamatory statement—from any party, concerning any message.  Each notification would require a careful yet rapid investigation of the circumstances surrounding the posted information, a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information.  Although this might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context.

129 F.3d at 333.  Courts thus routinely reject plaintiff's attempts to sidestep section 230 immunity by providing notice to the website operator before bringing suit.  *See, e.g., id.* (affirming dismissal of claims under section 230 even though plaintiff provided notice to website operator before filing suit); *Lycos, 478 F.3d at 420* (affirming dismissal under section 230 and holding, "It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it

---

[5] Planet Green's reference to section 5 of the FTC Act (Complaint ¶ 56) is irrelevant, as courts have applied section 230 to alleged violations of the FTC Act.  *See Federal Trade Commission v. Match Grp., Inc.*, 2022 WL 877107, at *1-2, *10 (N.D. Tex. Mar. 24, 2022) (dismissing the FTC's claims because "the true basis for the FTC's claim is third-party content" and thus section 230 immunity applies; *see also id.* at *11 ("Section 230(c)(2) reflects Congress's recognition that the potential for liability attendant to implementing safety features and policies created a disincentive for interactive computer services to implement any safety features or policies at all." (cleaned up)).

1   the service provider's own speech."); *Black v. Google Inc.*, 2010 WL 3222147, at *3

2   (N.D. Cal. Aug. 13, 2010) (dismissing claims under section 230 and rejecting notice

3   argument because "several courts have held that immunity is not vitiated because a

4   defendant fails to take action despite notice of the problematic content"); *Goddard*,

5   2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) ("Moreover, even if a service

6   provider knows that third parties are using such tools to create illegal content, the

7   service's provider's failure to intervene is immunized.").

8               b)      *Amazon's   Neutral   Actions   Are   Not   a   Substantial*

9                       *Contribution*

10          Planet Green next claims that Amazon contributes to the dissemination of the

11   offending content by "creat[ing] promotional emails and search engine marketing

12   content" that brings traffic to its website; "controls all customer service and returns

13   and responds directly to consumers who leave negative reviews for products"; and

14   "has a special badge called Amazon's Choice, which endorses products." (Complaint

15   ¶¶ 38, 48.)

16          But, as the Ninth Circuit has already held, *neutral* and generic actions, even if

17   they spread the reach of some of the offending material, do not defeat section 230

18   immunity.  As it explained in *Roommates*, the Ninth Circuit has applied section 230

19   even where the defendant "provided neutral tools specifically designed to match

20   romantic partners depending on their voluntary inputs." *Roommates*, 521 F.3d at 1172

21   (discussing *Carafano*).  That the website operator may have helped further disseminate

22   unlawful content through its neutral tools was irrelevant because those actions "did

23   absolutely nothing to enhance the defamatory sting of the message, to encourage

24   defamation or to make defamation easier." *Id.* (discussing *Carafano*).  The Ninth

25   Circuit likewise held in *Dyroff* that even though the defendant "recommend[ed]" the

26   offending content to new users, section 230 immunity applied because the

27   "recommendations and notifications" were "neutral tools" used to "facilitate the

28   communication and content of others." 934 F.3d at 1098.

- 15 -

In sum, a website does not become an information content provider by taking "content-neutral" actions. *Id.* at 1097. Significantly, Planet Green here *only references* content-neutral actions by Amazon. For example, Planet Green alleges that, for *all products*, Amazon serves as an "online catalog marketer, driving traffic, promoting, selling, and distributing products." (Complaint ¶ 41.) It also cites routine Amazon responses to customers about *fulfillment*, not the allegedly false content-at-issue. (*Id.* ¶ 44 ("Message from Amazon: This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.").) And Planet Green likewise admits that the "Amazon Choice" badge is based on a neutral algorithm that "endorse[s] products based on customer feedback, highlighting ratings, price, popularity, availability and delivery," not any evaluation of the allegedly false content-at-issue. (*Id.* ¶ 49.)[6]

Where, as here, the website operator's alleged actions are *neutral* in connection with the offending statement, section 230 bars plaintiff's claims. *See, e.g.*, *Dyroff*, 934 F.3d at 1098 (section 230 applies even though defendant "used features and functions, including algorithms, to analyze user posts on Experience Project and recommended other user groups"); *L.W.*, 2023 WL 3830365, at *5 ("Because Plaintiffs' complaint doesn't allege that either Google or Apple did anything more than create neutral tools by which users could download and access Snapchat, the argument fails."); *Goddard*, 640 F. Supp. 2d at 1199 (applying section 230 because Google's neutral "algorithm"

---

[6] Planet Green's theory that these neutral actions transform Amazon into a seller, and defeat section 230 immunity, has been soundly rejected. *Lasoff*, 2017 WL 372948, at *3 (rejecting argument that "in creating the algorithm that generates the keywords and then purchasing the right to use them on third-party search engines, Amazon is a 'direct actor' rather than a passive conduit of information content generated by some other provider" because "[t]he content to which [p]laintiff objects . . . is provided by third parties" not Amazon); *id.* ("The fact is that Amazon neither created nor developed that information content, and [section 230] prohibits [p]laintiff from seeking to hold Amazon liable for certain violations as though it had.").

does not "suggest the type of 'direct and palpable' involvement that otherwise is required to avoid CDA immunity").

        *c)*     *Amazon's Resales of Used Products Are Not a Substantial Contribution*

Finally, Planet Green alleges that if a customer returns a product, Amazon sometimes elects to sell it on an "Amazon Warehouse" page on its website. (Complaint ¶ 50; *id.* ¶ 52 ("identified illicit brands of ink cartridges that were purchased by Plaintiff, sold by Amazon Warehouse and fulfilled by Amazon").)  For such products, Planet Green claims that Amazon states: "For each used product we sell, we thoroughly test the condition of the item and provide detailed descriptions to make it easier for you to make a decision."  (*Id.* ¶ 51.)

But Planet Green does not allege that Amazon tests or verifies (much less edits) the original seller's description of whether a product is "remanufactured."  Far from it.  As a screenshot in the Complaint details, Amazon only certifies that it "test[s] the *functional and physical condition* of each item and give[s] the product a specific grade before selling it."  (*Id.* ("We also inspect our products for missing accessories and packaging damage."); *id.* ("appearance, functional qualities, accessories, and packaging condition").)  Amazon thus makes clear that it only assesses the *physical* condition of the product, not the product descriptions Planet Green claims are false.

Since Amazon does not create the offending content, section 230 still applies to bar liability for those product descriptions.  *See Batzel*, 333 F.3d at 1031 (explaining that in order to develop information, there must be "something more substantial than merely editing portions of an e-mail and selecting material for publication"); *Kimzey*, 836 F.3d at 1270 (concluding that a website that allows users to input business reviews or ratings did not use "anything other than user-generated data" and providing that the "star-rating system" is exactly the type of "neutral tool" that does "not amount to content development or creation"); *Brodie*, 503 F. Supp. 3d at 12 ("while Brodie asserts that the BSA handed Amazon editorial control over what Green Spot materials

- 17 -

1   were published, [ ], Brodie does not allege that Amazon actually exercised this control

2   to alter or modify advertising materials received from Green Spot, nor alleges facts

3   giving rise to such an inference").[7]

4                                                    ***

5         At bottom, Planet Green wants to hold Amazon liable for third-party content, a

6   theory that Congress foreclosed in section 230 of the Communications Decency Act

7   and that courts have consistently rejected.

8         **B.      Planet Green Fails to Identify Any False Statement of Fact by**

9                   **Amazon to Support Any of Its Claims**

10        All of Planet Green's claims rely on alleged false statements.  (Complaint ¶ 73

11  ("false statements"); *id.* ¶ 83 ("wrongful conduct" based on false statements described

12  earlier); *id.* ¶ 88 ("falsely claim"); *id.* ¶ 99 ("deceptive, untrue or misleading

13  statements").)  But Planet Green has not pleaded any false statement made *by* Amazon.

14        "The first element of the Ninth Circuit's five-element test for false advertising

15  claims requires 'a false statement of fact by the defendant in a commercial

16  advertisement about its own or another's product.'"  *Corker*, 2019 WL 5895430, at *2

17  (internal citations omitted).  When "the moving defendants are merely retailers of

18  products manufactured, produced, and packaged by third parties, the issue is whether

19  they made a false statement of fact in commercial advertising when they put the third-

20  party vendor's product on their shelves or websites."  *Id*.  The "relevant court

21  authority" reveals "that the answer is 'no.'"  *Id*. (citing cases and policy consideration

22  that retailers cannot be "responsible for scrutinizing and determining the veracity of

23

24

---

25  [7] *See also Dimeo v. Max*, 433 F. Supp. 2d 523, 530-31 (E.D. Pa. 2006) (section 230
26  applies because even though defendant "can select which posts to publish and edits
     their content," it "did not create the anonymous posts[, t]he posters authored them
27  entirely on their own"); *AdvanFort Co. v. Cartner*, 2015 WL 12516240, at *4-5 (E.D.
     Va. Oct. 30, 2015) (holding that defendant "is immune from liability under the CDA"
28  because "republishing an article on Twitter is not an editorial function different than
     selecting an article to be published on a website or in an electronic newsletter").

1  every claim on every product label in their stores simply because they sell the product"
2  (internal citation omitted)).

3      That is true here.  Planet Green does not allege that Amazon manufactures,
4  produces, or packages any of the products at issue.  (*See generally* Complaint.)  Nor
5  does Planet Green allege that Amazon contributed to the offending *content* of the
6  allegedly false product descriptions.  (*Id.*)

7      Because Planet Green does not allege that Amazon created any of the false
8  statements, it cannot maintain any of its claims.  *See, e.g.*, *Lasoff*, 2017 WL 372948,
9  at *8 ("Plaintiff fails to draw a meaningful distinction between two interactive
10 computer service providers who created a platform for advertising which contained
11 misrepresentative material generated by third parties.  In both instances, liability lies
12 with the vendors who created the misleading content, not the service providers who
13 transmit that content."); *Hawaii Foodservice All., LLC v. Meadow Gold Dairies
14 Hawaii, LLC*, 2023 WL 159907, at *5-6 (D. Hawaii Jan. 11, 2023) (dismissing false
15 advertising claim because "Plaintiff does not allege that the Dairy Farmers had control
16 over, or involvement in, creating the statements on the labels"); *In re Outlaw Lab., LP
17 Litig.*, 424 F. Supp. 3d 973, 981-82 (S.D. Cal. 2019) (dismissing false advertising
18 claim because "in the same way that an internet platform is not responsible for the
19 veracity of vendors' advertisements, a retail or wholesale store cannot be found liable
20 for false information appearing on the packages of the products that they sell").[8]

21

22  ---

[8] *See also* *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 624 F. App'x 81, 82 (4th
23  Cir. 2015) ("[T]he locksmiths who generated the information that appeared on
    Defendants' websites are solely responsible for making any faulty or misleading
24  representations or descriptions of fact" for purposes of Section 43(a)(1)(B)); *Outlaw
    Lab., LP v. Shenoor Enter.*, 371 F. Supp. 3d 355, 362-68 (N.D. Tex. 2019) (concluding
25  that retailers are not liable for false advertising under the Lanham Act because they do
26  not make a false statement simply be displaying or selling a product that was falsely
    labeled by another); *Optimum Techs., Inc. v. Home Depot USA, Inc.* 2005 WL
27  3307508, *4-6 (N.D. Ga. Dec. 5, 2005) (noting that, to be actionable under Section
28                                                                    (Continued...)

**C.    Planet Green's Common-Law Unfair Competition Claim (Count 2) Must Be Dismissed Because It Does Not Allege that Amazon "Passed Off" Trade Names or Trademarks**

Planet Green asserts a common-law unfair competition claim that incorporates the alleged false advertising "wrongful conduct" described in the Complaint. (Complaint ¶ 83.)  But in California, "the common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992).  The Ninth Circuit affirms dismissal of common-law unfair competition claims where the plaintiff did not allege that defendants "passed off their goods as those of another nor that they exploit trade names or trademarks." *Sybersound*, 517 F.3d at 1153.

Planet Green makes no such allegations here, and so the unfair competition claim should be dismissed.  *See, e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("Because Plaintiffs' allegations do not amount to 'passing off' or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus, Inc.*, 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) ("Relying on Ninth Circuit precedent, the Court concludes that Plaintiff has failed to allege a claim under common law unfair competition as it has not alleged that defendant passed off its goods as those of another or that it exploited any trademarks or trade names.").

**D.    Planet Green Cannot Recover Disgorgement, Restitution, or Civil Penalties Under Its UCL (Count 3) and FAL (Count 4) Claims**

Planet Green seeks three remedies that are unavailable to it as a matter of law: disgorgement, civil penalties, and restitution under its Unfair Competition Law and False Advertising Law claims.  (Complaint ¶ 96 (seeking "restitution" and to "deny

---

43(a)(1)(B), a misrepresentation must be made "in commercial advertising or promotion," which presumes that the defendant be in commercial competition with the plaintiff, not merely a retailer of a third-party's goods).

Defendants the fruits of their illegal conduct"); *id.* ¶ 101 (seeking that Defendants "disgorge all profits" and "perform full restitution").)  Planet Green also requests that the Court "impose a civil penalty of $2,500.00 [under the UCL] against Defendants for each violation of Business and Professions Code section 17200."  (Complaint ¶ 96.)  It cannot recover any of these three requested remedies.

*First*, with respect to <u>disgorgement</u>: "Under the UCL and the FAL, 'prevailing plaintiffs are generally limited to injunctive relief and restitution.'" *Casillas*, 2016 WL 10966424, at *3 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1444 (2003)); *id.* ("The restitution remedies under the UCL and the FAL are identical.").  "Nonrestitutionary disgorgement is not available under the UCL" or FAL. *Id.* ("Neither the UCL nor the FAL enable her to obtain Northgate's revenues from third parties based on the misleading advertisement.").  Consequently, Planet Green's request for disgorgement must be dismissed and/or stricken.[9] *Rave Wonderland*, 2019 WL 6792808, at *3-4 (dismissing request for nonrestitutionary disgorgement); *Tortilla Factory, LLC v. Trader Joe's Co.*, 2018 WL 8367468, at *5 (C.D. Cal. Oct. 11, 2018) (granting defendant's motion to strike plaintiff's prayers for disgorgement of profits where plaintiff did not seek the return of money once in its possession or that plaintiff had an ownership interest in).

*Second*, with respect to <u>civil penalties</u>: "[C]ourts have consistently held that civil penalties, including those provided for under a 'borrowed' statute, are not available to private plaintiffs under § 17200." *Cedars-Sinai*, 2010 WL 1875556, at *6-7 (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) ("In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are generally

---

[9] Though "[c]ourts are split with respect to whether challenging the relief sought is best suited for a 12(b)(6) motion to dismiss or a 12(f) motion to strike," "regardless of the manner through which courts have addressed the issue, the end result is the same: plaintiffs' prayers for nonrestitutionary disgorgement have not been permitted to proceed where a plaintiff fails to plead an ownership interest in the profits being sought." *Rave Wonderland*, 2019 WL 6792808, at *3.

1  limited to injunctive relief and restitution." (internal quotations omitted))).  Planet

2  Green as a private plaintiff is not entitled to any civil penalties.  *See, e.g.*, *id.* ("All

3  references to statutory penalties in Plaintiff's § 17200 claim and in Plaintiff's prayer

4  for relief are therefore stricken.").

5  *Finally*, with respect to <u>restitution</u>: "To be awarded restitution under either [the

6  UCL or FAL]," plaintiff "must show that some of her 'money or property' was

7  'acquired' by the defendant."  *Casillas*, 2016 WL 10966424, at *3 (quoting Cal. Bus.

8  & Prof. Code §§ 17203, 17535).  Since Planet Green here does not "seek[] the return

9  of money or property that was once in its possession," its request for restitution fails.

10  *Id.* (quoting *Korea Supply*, 29 Cal. 4th at 1148); *spinTouch, Inc. v. Outform, Inc.*, 2021

11  WL 6103549, at *8 (C.D. Cal. Nov. 8, 2021) (dismissing restitution remedy because

12  "[p]laintiff does not allege any payments or other property that it gave to [defendant]

13  personally").

14  **V.   CONCLUSION**

15  As in many other failed cases, here, a plaintiff improperly attempts to hold a

16  website operator responsible for third-party speech.  Because Planet Green cannot

17  allege that Amazon created the alleged false statements, section 230 bars its claims.

18  And even if section 230 did not apply, Planet Green cannot maintain claims based on

19  false advertisement without identifying a specific false statement made by Amazon.

20  Amazon thus requests that the Court dismiss the Complaint with prejudice.  In the

21  alternative, the Court should dismiss the unfair competition common law claim and

22  dismiss and/or strike Planet Green's requests for disgorgement, restitution, and civil

23  penalties under the UCL and the FAL.

24

25

26

27

28

Dated:  September 18, 2023             **HUESTON HENNIGAN LLP**


By: _____
Moez M. Kaba
Sourabh Mishra
Emily Minton Mattson

Attorneys for Defendants
Amazon.com, Inc., Amazon.com,
Services LLC, & Amazon
Advertising LLC

## CERTIFICATE OF COMPLIANCE

Under C.D. Cal. Local Rule 11-6.1, parties must abide by a word count limitation "[e]xcept as otherwise provided in this rule or ordered by a judge." In its Standing Order, this Court applies a page-limitation: "Memoranda of Points and Authorities in support or in opposition to motions shall not exceed 25 pages." (ECF 10 at 9.)

The undersigned, counsel of record for Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Advertising LLC, certifies that this memorandum of points and authorities is 22 pages, which complies with this Court's rules.

Dated:  September 18, 2023          **HUESTON HENNIGAN LLP**

By: _____
     Moez M. Kaba
     Sourabh Mishra
     Emily Minton Mattson

     Attorneys for Defendants
     Amazon.com, Inc., Amazon.com,
     Services LLC, & Amazon
     Advertising LLC