**UNITED STATES DISTRICT COURT**  
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No. **CV 23-6647-JFW(KSx)** | Date: December 5, 2023 |

Title:   Planet Green Cartridges, Inc. -v- Amazon.com, Inc., et al.

---

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**     **ATTORNEYS PRESENT FOR DEFENDANTS:**
               None                    None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [filed 10/24/23; Docket No. 44]**

On October 24, 2023, Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Advertising LLC (collectively, "Defendants") filed a Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). On November 6, 2023, Plaintiff Planet Green Cartridges, Inc. ("Plaintiff") filed its Opposition. On November 13, 2023, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's November 27, 2023 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

On October 10, 2023, Plaintiff filed a First Amended Complaint ("FAC"), alleging claims for: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) false association and false designation of origin or approval in violation of Lanham Act 15 U.S.C. § 1125(a)(1)(A); (3) common law unfair competition; (4) unfair competition in violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful and unfair prongs); (5) false advertising in violation of California Business & Professions Code §§ 17500, *et seq.*; and (6) negligence.

"Amazon.com, Inc. markets and sells products to retail consumers all over the world through internet websites such as www.amazon.com."  FAC ¶ 6.  Amazon.com Services LLC "sells products to consumers through Amazon Warehouse that are fulfilled by Amazon.com."  FAC, ¶ 7. Amazon Advertising LLC "provides advertising services to third party sellers."  FAC, ¶ 8.  Plaintiff

does business as "DoorstepInk," and has been a printer ink cartridge remanufacturer since 1999. Plaintiff "remanufacture[s] ink cartridges in a state-of-the-art facility utilizing a painstaking process consisting of obtaining used OEM [or "original equipment manufacturer"] cartridge cores, thoroughly inspecting, cleaning, refilling the cartridges with new ink, testing for quality control, and packaging for resale."  FAC, ¶ 15.

The gravamen of Plaintiff's FAC is that third-party sellers sell ink cartridges on Defendants' website and that the product listings for those ink cartridges falsely advertised them as "remanufactured" or "recycled."  FAC, ¶ 1.  Specifically, Plaintiff alleges that it is "one of the only remaining printer cartridge remanufactuer[s] in the United States" and that "the United States printer cartridge remanufacturing industry has been eviscerated" because of "the conduct of Defendants as the primary advertiser and distributor and a major seller of inauthentic clone ink cartridges that are falsely represented as remanufactured and/or recyclable in promotions, packaging, labeling, and on the products themselves."  FAC, ¶¶ 15-16.  Plaintiff admits that Defendants do not create any of the product listings containing any of the allegedly false statements.  FAC, ¶ 36 (referring to the listings as "third-party seller listings").  However, Plaintiff claims that Defendants are liable for false advertising because Amazon allegedly "approves seller listings, accepts possession of products, and store the products in its warehouses, attracts the customer to the Amazon website using third-party seller listings, provides customers with product listings for their searches, processes customer payments for the product, and ships products in Amazon packaging to customers."  FAC, ¶ 36.  In addition, Plaintiff alleges that Defendants control "all customer service and returns and responds directly to consumers who leave negative reviews for products fulfilled by" Defendants.  FAC, ¶ 39.  Plaintiff also alleges that Defendants label some products as "Amazon's Choice" and resell returned third-party products on its Amazon Warehouse page.  FAC, ¶¶ 49 and 52.

Plaintiff alleges that, before it filed this action, it notified Defendants of allegedly false statements by third parties, and that Defendants took steps to investigate those product listings.  FAC, ¶¶ 64 and 66.  Specifically, Plaintiff alleges that Defendants "asked sellers to substantiate their claims about selling remanufactured and environmentally responsible ink cartridges."  FAC, ¶ 66.  Moreover, "[t]hirty-party sellers who couldn't substantiate their product claims were instructed to change their product listings."  FAC, ¶ 66.  However, according to Plaintiff, some third-party sellers "were allowed to continue to sell regardless of their history of defrauding customers."  FAC, ¶ 66.  Plaintiff also alleges that Defendants failed "to adopt a simple verification process for remanufactured printer ink cartridges," despite being urged to do so in February 2023 by the International Imaging Technology Council ("IITC"), a trade association for imaging supply dealers, remanufacturers, and industry suppliers and consultants.  FAC, ¶¶ 74-75.

II.     **Legal Standard**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.   Discussion

In their Motion, Defendants argue that all of Plaintiff's claims should be dismissed because Defendants are entitled to immunity under Section 230 of the Communications Decency Act ("CDA").  In addition, Defendants argue that Plaintiff's first five claims (all of its claims other than its sixth claim for negligence) should be dismissed because Plaintiff has failed to identify any "false statement of fact" made by Defendants.  Defendants also argue that Plaintiff's second claim for false designation of origin in violation of the Lanham Act and third claim for common law unfair competition should be dismissed because Plaintiff fails to plausibly allege a claim.  Finally, Defendants argue that Plaintiff's sixth claim for negligence should be dismissed for failure to allege a cognizable legal duty.  In its Opposition, Plaintiff argues that Section 230 of the CDA does not provide immunity to Defendants because its claims do not derive from the publication of third party content.  Plaintiff also argues that it has alleged a sufficient factual and legal basis for all of its claims.

### A. Section 230 of the CDA Provides Defendants Immunity for All of Plaintiff's Claims

Section 230 of "[t]he CDA provides that website operators are immune from liability for third-party information . . . unless the website operator 'is responsible, in whole or in part, for the creation or development of [the] information.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096-97 (9th Cir. 2019) (*quoting* 47 U.S.C. §§ 230(c)(1) & (f)(3)). This immunity "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009) (citation omitted). As a result, reviewing courts have treated Section 230 "immunity as quite robust" (*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)), and courts often apply Section 230 to bar federal, state, and local claims at the motion-to-dismiss stage. *See, e.g, Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) ("The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.") (internal quotation omitted); 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section"); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed") (internal quotation omitted). In the Ninth Circuit, Section 230 immunity apples if three criteria are met: (1) "the provider is an interactive computer service"; (2) "the plaintiff is treating the entity as the publisher or speaker"; and (3) "the information is provided by another information content provider." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023) (*citing Dyroff,* 934 F.3d at 1097).

In this case, the Court concludes that, for the reasons discussed below, Section 230 provides Defendants immunity from all of Plaintiff's claims. Accordingly, Defendants' Motion is granted, and Plaintiff's FAC is dismissed.

#### 1. Defendants are Interactive Computer Service Providers

In determining if Defendants are entitled to immunity under Section 230, the Court must first determine if Defendants are interactive computer service providers. Under Section 230, "[t]he term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The Ninth Circuit "interpret[s] the term 'interactive computer service' expansively." *Dyroff*, 934 F.3d at 1097 (*citing Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016)). "Websites are the most common interactive computer services." *Id*. Moreover, when a plaintiff admits that its allegations concern a defendant's action or inaction relating to a website, the defendant qualifies as a provider of an "interactive computer service." *Id.* (concluding that the defendant qualified as an interactive computer service provider because the plaintiff alleged that his son had "set up accounts on" a website); *see also Kimzey*, 836 F.3d at 1268 (holding that "Yelp is plainly a provider of an 'interactive computer service'" because the allegations concerned the operation of its website).

In this case, Plaintiff's allegations make clear that Defendants are providers of interactive computer services as defined by Section 230. Specifically, Plaintiff alleges that Defendants "market" and "sell" products to retail consumers "through internet websites." *See* FAC, ¶ 6. In

addition, Plaintiff admits that its allegations concern products "available for purchase on Amazon's website." FAC, ¶ 18; FAC, ¶ 33 ("sale of inauthentic printer cartridges, advertised, sold, and distributed by Defendants through their website"). Moreover, the overwhelming majority of courts that have considered the issue have concluded that Defendants are providers of interactive computer services within the meaning of Section 230. *See, e.g., McCarthy v. Amazon.com, Inc.*, __ F.Supp. 3d __, 2023 WL 4201745 (W.D. Wash. June 27, 2023) (concluding that Amazon is an interactive computer service provider); *Ratermann v. Pierre Fabre USA, Inc.*, 651 F.Supp. 3d 657 (S.D.N.Y. 2023) (concluding that Amazon "fall[s] comfortably within th[e] definition" of "interactive computer service provider); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 n.5 (S.D.N.Y. 2018) (confirming that Amazon is an interactive computer service in a products-liability case seeking to hold Amazon liable for content posted by a third-party retailer); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1105 (W.D. Wash. 2014) (holding that Amazon is an interactive service provider because Amazon "operates a website that allows consumers to purchase items online"); *Almeida v. Amazon.Com, Inc.*, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) (holding that Amazon is an "interactive computer service" because "[i]ts primary function is to allow multiple users to a computer service the ability to purchase various items"), *aff'd* 456 F.3d 1316 (11th Cir. 2006).

Accordingly, the Court concludes that Defendants are interactive computer service providers under Section 230.

### 2.  Plaintiff Treats Defendants as Publishers or Speakers

In determining if Defendants are entitled to immunity under Section 230, the Court must next determine if any of Plaintiff's claims "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir.), *as amended* (Sept. 28, 2009). "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Id*. "If it does, section 230(c)(1) precludes liability." *Id*. "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id*. at 1102-03 (noting that a defendant cannot be held liable for a decision whether to publish or remove third-party content). In other words, "[p]ublishing encompasses 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Gonzalez v. Google LLC*, 2 F.4th 871, 894 (9th Cir. 2021) (*quoting Roommates*, 521 F.3d at 1170-71), *rev'd on other grounds by Twitter, Inc., v. Taamneh*, 598 U.S. 471 (2023); *see also Rangel v. Dorsey*, 2022 WL 2820107, at *2 (N.D. Cal. July 19, 2022) ("Rangel seeks to 'treat [Twitter] as the publisher' because his claims derive entirely from Twitter's decision to exclude his content and suspend his account—that is, traditional publishing functions."); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (affirming dismissal of claims involving "MySpace's decisions to delete Riggs's user profiles on its social networking website yet not delete other profiles Riggs alleged were created by celebrity imposters"); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011) ("Plaintiffs' allegations of extortion based on Yelp's alleged manipulation of their review pages – by removing certain reviews and publishing others or changing their order of appearance – falls within the conduct immunized by § 230(c)(1)"), *aff'd*, 765 F.3d 1123 (9th Cir. 2014). In addition, courts routinely find that allegations that defendants published or failed to remove offending content, including false advertising, necessarily seek to hold defendants responsible as publishers. *See, e.g., Barnes*, 570 F.3d at 1103-04 ("[R]emoving

content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove"); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1005 (N.D. Cal. 2022) (concluding that the failure to remove an application from Google's Play Store "boils down to deciding whether to exclude material . . . that a third party seeks to place in the online Play Store"); *Bride v. Snap Inc.*, 2023 WL 2016927, at *6 (C.D. Cal. Jan. 10, 2023) (holding that Section 230 applies when a plaintiff sought to hold a defendant liable for false advertising based on the accusation that they "should have monitored and curbed third-party content").

In this case, the Court concludes that Plaintiff's claims require the Court to, in effect, treat Defendants as the publishers or speakers of the purportedly false advertising. *See, e.g.,* FAC ¶ 77 (alleging a claim for false advertising under Section 1125(a) of the Lanham Act); FAC, ¶ 88 (alleging claim for false association and false designation of origin or approval under Section 1125(a) of the Lanham Act); FAC, ¶ 96 (alleging common law unfair competition based on purportedly wrongful false advertising); FAC, ¶ 102 (alleging statutory unfair competition claim based on purportedly wrongful false advertising); FAC, ¶ 113 (alleging California false advertising law claim); FAC, ¶ 120 (alleging claim for negligence because Defendants purportedly breached their duty by failing to verify false advertising). Indeed, Plaintiff's claims are all based on the theory that Defendants "continue to allow unlawful sellers to maintain their accounts" and "permit them to advertise" on Defendants' website. FAC, ¶ 3 (Defendants "continue to allow sellers that have deceived millions of consumers with [its] false advertising and recyclability claims . . . to sell clone ink cartridges over Amazon"); *see also* FAC, ¶ 20 ("Sellers are allowed to list multiple products claiming to be remanufactured OEM cartridges, frequently bearing the 'recyclable' symbol . . . when in fact they are newly manufactured clone cartridges, not OEM product[s], and not in fact a recycled or recyclable product"); FAC, ¶ 38 ("Below are screen shots of Amazon's specific ink and toner selling policies that Defendants are not enforcing, allowing for deceptive product descriptions to rampantly take place across the category"). In addition, Plaintiff alleges that "Defendants bear responsibility for verifying the advertising claims and product authenticity of its third-party sellers." FAC, ¶ 56; *see also* FAC, ¶ 117. However, the Ninth Circuit has held that Section 230 immunity applies to false advertising claims and other claims that are based on purportedly false representations. *See, e.g., Perfect 10*, 488 F.3d at 1118-19 (affirming dismissal of false advertising and unfair competition claims under Section 230); *see also L.W. through Doe v. Snap, Inc.*, --- F. Supp. 3d ----, 2023 WL 3830365, at *2 (S.D. Cal. June 5, 2023) (dismissing California False Advertising Law and unfair competition claims based on Section 230); *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1040-42 (2022) (dismissing unfair competition claim based on Section 230).

In addition, Plaintiff treats Defendants as publishers or speakers in its UCL claim because each of the statutes cited by Plaintiff concerns false or misleading statements.[1] See, e.g., Cal. Bus. & Prof. Code, § 17500 (prohibiting false or misleading statements in advertising); Cal. Bus. &

---

[1] Plaintiff also cites to California Public Resources Code § 42355.51 in connection with its UCL claim. Section 42355.51 prohibits the sale, distribution, or importation of products or packaging with deceptive or misleading claims about their recyclability, specifically, as relevant here, products or packaging bearing symbols that falsely denote recyclability. However, Section 42355.51 does not take effect until January 1, 2024.

Prof. Code, § 17580.5 (prohibiting misleading environmental marketing claims); 15 U.S.C. § 45(a) (prohibiting deceptive acts or practices in or affecting commerce).  As the FAC makes clear, those allegedly false or misleading statements consist solely of third-party content.  *See, e.g.,* FAC, ¶ 20 (alleging that "[s]ellers are allowed to list multiple products" with "the 'recyclable' symbol in their listings, packaging and on the products"); FAC, ¶ 21 (screenshots of third-party sellers' products).

The Court concludes that Plaintiff's claims easily satisfy the second criteria for Section 230 immunity because those claims are premised on Defendants' conduct as publishers of third-party content.  Indeed, when "the accusation . . . is fundamentally that defendants should have monitored and curbed third-party content," courts consistently hold that the defendants are immune under Section 230 and dismiss the plaintiff's claims.  *See, e.g., Bride v. Snap Inc.*, 2023 WL 2016927, at *5-6 (C.D. Cal. Jan. 10, 2023) (when the plaintiffs sought "to hold Defendants liable based on content published by anonymous third parties on their applications," their claims fell "squarely within Section 230's broad grant of immunity"); *see also Ynfante v. Google LLC*, 2023 WL 3791652, at* 3 (S.D.N.Y. June 1, 2023) (when the plaintiff asserted that "Google had a duty to 'vet and verify the authenticity and legitimacy of potentially fraudulent advertisements,'" its claims were "fundamentally premised on Google's actions related to publishing the scam advertisement"); *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 281 (E.D. Pa. 2022) (when the plaintiff's claims implicated the defendants' "monitoring, screening, arrangement, promotion, and distribution" of third-party content, her claims were "plainly barred by Section 230 immunity").

Plaintiff argues its allegations that Defendants resell used or returned third-party ink cartridges via its "Amazon Warehouse" business demonstrate that its claims are not entirely dependent on Defendants' conduct as a publisher or a speaker.  *See, e.g.,* FAC, ¶ 52 ("[I]f Defendants reimburse a seller for any damaged, lost or returned product, Defendants can dispose of any item or sell it on the Amazon Warehouse").  However, Defendants cannot be held liable for third-party content merely because it resold third-party products and re-posted third-party content.  *See, e.g., Corker v. Costco Wholesale Corp.*, 2019 WL 5895430, at *2-3 (W.D. Wash. Nov. 12, 2019) (concluding that retailers are immune under Section 230 "to the extent they [are] simply retailing products produced, manufactured, and packaged by third parties").  In addition, Plaintiff does not (and cannot) allege that Defendants created any of the third-party statements in the product listings.  *See, e.g., Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 11-13 (S.D.N.Y. 2020) (holding that Amazon was immune under Section 230 because Section 230 "bars liability for the exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content") (internal quotation omitted); *Lasoff v. Amazon.com Inc.*, 2017 WL 372948, at *4 (W.D. Wash. Jan. 26, 2017) (holding that when "Amazon neither created nor developed" the content, Section 230 "prohibit[ed] Plaintiff from seeking to hold Amazon liable . . . as though it had").

Accordingly, the Court concludes that Defendants have satisfied the second criteria for immunity under Section 230 because Plaintiff treats Defendants as publishers or speakers.

### 3.     Third Parties Provided the Allegedly False or Misleading Content

The third criteria for Section 230 immunity examines who provided or was the source of the content that allegedly gives rise to liability. *Dyroff*, 934 F.3d at 1098-1099. If the content is provided by a third party, and not the defendant, Section 230 bars the plaintiff's claims. *Id.*; *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (holding that Section 230(c)(1) "cuts off liability only when a plaintiff's claim faults the defendant for information provided by third parties," but that "internet companies remain on the hook when they create or develop" the content at issue or are "responsible . . . in part, for the creation or the development of' the offending content") (internal quotation omitted). Ninth Circuit cases "establish that a website may lose immunity under [Section 230] by making a material contribution to the creation or development of content." *Kimzey*, 836 F.3d at 1269-70. "A 'material contribution' does not refer to merely augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *3 (N.D. Cal. Apr. 27, 2022). The material contribution "test draws the line at the crucial distinction between, on the one hand taking actions to display actionable content, and on the other hand, responsibility for what makes the displayed content itself illegal or actionable." *Id*. "That is, immunity will be lost only when the website contributes to the
illegality of the third-party content." *Id*.

In this case, Plaintiff does not alleged that Defendants created any of the purportedly false or misleading content at issue. Instead, Plaintiff expressly alleges that the "seller listings" that contain the purportedly false advertising are "third-party seller listings." FAC, ¶ 36. In addition, Plaintiff alleges that Defendants contacted third parties to change their product listings to remove the purportedly false content because the "third party sellers are [the ones who are] falsely advertising their listings, products, and packaging." *See, e.g.*, FAC, ¶ 17 ("18 brands and their numerous listings of aftermarket ink cartridges"); FAC, ¶ 66 ("Third-party sellers who couldn't substantiate their product claims were instructed to change their product listings" and "Below are before and after examples of listings by Sellers who were instructed by Defendants to change their product listings"); FAC, ¶ 21 ("[Third party] Sheengo depicts its box to look like a Canon box and claims to be remanufactured"); FAC, ¶ 25 ("Below is an example of how two brands, Greencycle and Inktopia, are creating multiple listings that saturate the platform"); FAC, ¶ 24 (claiming that forty-five third-party brands are falsely advertising their products).

Plaintiff argues that Defendants are not immune under Section 230 because Amazon contributes to the dissemination of the offending content by "creat[ing] promotional emails and search engine marketing content" that brings traffic to its website; "controls all customer service and returns and responds directly to consumers who leave negative reviews for products"; and "has a special badge called Amazon's Choice, which endorses products." FAC, ¶¶ 39 and 49. However, the Ninth Circuit has held that neutral and generic actions, even if they spread the reach of some of the offending material, do not defeat Section 230 immunity. *Kimzey*, 836 F.3d at 1270 (holding that an interactive computer service cannot "be held liable for 'republishing' [third-party] content as advertisements or promotions . . . or disseminating the same content in essentially the same format to a search engine" because doing so "does not change the origin of the third-party content"); *Roommates.com*, 521 F.3d at 1169 (holding that an interactive computer service "providing neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception"). For example, in *Dyroff*, the Ninth Circuit held that even though the defendant "recommend[ed]" the offending content to new users, section 230 immunity applied because the "recommendations and notifications" were "neutral tools" used

to "facilitate the communication and content of others." *Dyroff*, 934 F.3d at 1098; *see also Roommates*, 521 F.3d at 1172 (holding that it was irrelevant that an interactive computer service provider may have helped further disseminate unlawful content through its neutral tools, because those actions "did absolutely nothing to enhance the defamatory sting of the message, to encourage defamation or to make defamation easier").

In the FAC, Plaintiff has alleged content neutral actions by Defendants related to the dissemination of the purportedly false or misleading content. For example, Plaintiff alleges that, for all products, Amazon serves as an "online catalog marketer, driving traffic, promoting, selling, and distributing products." FAC, ¶ 42. Plaintiff also cites routine responses by Defendants to customers about fulfillment. FAC, ¶ 45 ("Message from Amazon: This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience"). In addition, Plaintiff admits that the "Amazon Choice" badge is based on a neutral algorithm that "endorse[s] products based on customer feedback, highlighting ratings, price, popularity, availability and delivery," and does not involve any evaluation of the allegedly false or misleading content. FAC, ¶ 50. Because Plaintiff's allegations that Defendants' actions in connection with the purportedly false or misleading content are neutral, Defendants are entitled to immunity pursuant to Section 230 because the purportedly false or misleading content consists exclusively of third party content. *See, e.g., Dyroff*, 934 F.3d at 1098 (holding that Section 230 applies even though the defendant "used features and functions, including algorithms, to analyze user posts on Experience Project and recommended other user groups"); *L.W.*, 2023 WL 3830365, at *5 ("Because Plaintiffs' complaint doesn't allege that either Google or Apple did anything more than create neutral tools by which users could download and access Snapchat, the argument fails"); *Goddard*, 640 F. Supp. 2d at 1199 (applying Section 230 because Google's neutral "algorithm" does not "suggest the type of 'direct and palpable' involvement that otherwise is required to avoid CDA immunity").

Accordingly, the Court concludes that Defendants satisfy the third criteria for immunity under Section 230 because the purportedly false or misleading content that is the basis of Plaintiff's claims is all provided by third parties, and not Defendants.

### B.    Plaintiff Fails to Identify Any False Statement of Fact Made by Defendants

Defendants argue that, even if Section 230 immunity does not apply to Plaintiff's claims, Plaintiff's first claim for false advertising in violation of the Lanham Act, second claim for false association and false designation of origin or approval in violation of Lanham Act, third claim for common law unfair competition, fourth claim for violation of the UCL, and fifth claim for violation of California's false advertising law fail because those claims rely on purportedly false statements and Plaintiff has failed to allege that Defendants have made any false statements.

"The first element of the Ninth Circuit's five-element test for false advertising claims requires 'a false statement of fact by the defendant in a commercial advertisement about its own or another's product.'" *Corker*, 2019 WL 5895430, at *2 (citation omitted). When "the moving defendants are merely retailers of products manufactured, produced, and packaged by third parties, the issue is whether they made a false statement of fact in commercial advertising when they put the third-party vendor's product on their shelves or websites." *Id.* The "relevant court authority" reveals "that the answer is 'no.'" *Id.* (agreeing with the conclusion that retailers cannot be "responsible for scrutinizing and determining the veracity of every claim on every product label

in their stores simply because they sell the product") (citations and internal quotation marks omitted).

In this case, the Court concludes that Plaintiff has failed to allege that Defendants manufactured, produced, or packaged any of the products at issue and Plaintiff has also failed to allege that Defendants created or otherwise contributed to the purportedly false product descriptions.  *See, e.g.,* FAC, ¶ 77 ("false statements"); FAC, ¶ 89 ("false and misleading use of terms, names, symbols, and descriptions and representations of fact"); FAC, ¶ 96 ("wrongful conduct" based on false statements described earlier); FAC, ¶ 102 ("falsely claim"); FAC, ¶ 113 ("deceptive, untrue or misleading statements").  Because Plaintiff does not allege that Defendants created or otherwise contributed to any of the purportedly false product descriptions, Plaintiff cannot maintain its first, second, third, fourth, or fifth claims.  *See, e.g., Lasoff*, 2017 WL 372948, at *8 ("Plaintiff fails to draw a meaningful distinction between two interactive computer service providers who created a platform for advertising which contained misrepresentative material generated by third parties.  In both instances, liability lies with the vendors who created the misleading content, not the service providers who transmit that content."); *Hawaii Foodservice All., LLC v. Meadow Gold Dairies Hawaii, LLC*, 2023 WL 159907, at *5-6 (D. Haw. Jan. 11, 2023) (dismissing false advertising claim because "[p]laintiff does not allege that the Dairy Farmers had control over, or involvement in, creating the statements on the labels"); *In re Outlaw Lab., LP Litig.*, 424 F. Supp. 3d 973, 981-82 (S.D. Cal. 2019) (dismissing false advertising claim because "in the same way that an internet platform is not responsible for the veracity of vendors' advertisements, a retail or wholesale store cannot be found liable for false information appearing on the packages of the products that they sell").

Accordingly, Defendants' Motion is granted with respect to Plaintiff's first, second, third, fourth, and fifth claims, and those claims are dismissed.

### C.     Plaintiff Fails to Allege that Defendants "Passed Off" Its Trade Names, Trademarks, or Brands

In its FAC, Plaintiff alleges that the purportedly false or misleading information contained in the third party product descriptions "deceive[s] the public into falsely believing that the illicit ink cartridges sold on Amazon are remanufactured, recyclable products that originate with or are otherwise associated with or sponsored by Plaintiff, which is the nearly exclusive lawful producer and supplier of remanufactured printer ink cartridges in the United States."  FAC, ¶ 87.  This allegation forms the basis for Plaintiff's second claim for false designation of origin or approval under the Lanham Act and third claim for common-law unfair competition.  FAC, ¶¶ 86-99.  Defendants argue that Plaintiff cannot maintain either its false designation of origin or approval under the Lanham Act claim and common-law unfair competition claim because Plaintiff fails to plausibly allege that Defendants "passed off" Plaintiff's trade names or trademarks or that it owns or maintains the exclusive right to use any "recycled" or "remanufactured" marks for ink cartridges in the marketplace.

"Passing off, or palming off, occurs when a producer sells its own goods as that of another brand."  *R & A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, *13 (C.D. Cal. May 1, 2019).  When a product is marketed "under [its own] brand name," the allegations "do not constitute passing off or reverse passing off necessary to support a claim for false designation of origin."  *Id*. at *14; *see*

*also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act").

In this case, Plaintiff does not allege that any of the products that purportedly contain false advertising use its marks "Planet Green" or "Doorstepink." Instead, Plaintiff admits that consumers who purchase the third-party products may not even "know the name of [Planet Green]" at all. FAC, ¶ 16. In addition, the FAC includes numerous screenshots showing that the identified third-party products use their own brand names and not Plaintiff's names or brands. FAC, ¶ 21(1)(a) ("Amazon listing for V-Surink"); FAC, ¶ 21(1)(d) ("BJ Ink Cartridge"); FAC, ¶ 21(2) ("Sheengo"); FAC, ¶ 21(4) ("Greencycle"); and FAC, ¶ 21(5) ("Inktopia"). Indeed, the FAC includes a list of forty-five "brands" that are allegedly "falsely sold as 'remanufactured' and recycled products," and none of those brands use the Planet Green or Doorstepink name or brand. FAC, ¶ 24. In addition, Plaintiff has not and cannot allege that consumers link "Planet Green" or "Doorstepink" to all remanufactured ink cartridges in the United States because Plaintiff is not the exclusive seller of those cartridges. *Obesity Research Institute, LLC v. Fiber Research International, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (surviving motion to dismiss where Fiber Research alleged "that it ha[d] an exclusive sales contract to sell Propol in the United States," meaning that consumers linked Propol to Fiber Research, and only Fiber Research). To the contrary, Plaintiff specifically alleges that it is "one of the only remaining printer ink cartridge remanufacturer[s] in the United States" (FAC, ¶ 16), and, as result, Plaintiff acknowledges the existence of other printer ink cartridge remanufacturers in the United States. *See also* FAC, ¶ 87 (claiming to be "nearly exclusive" but not the "exclusive" seller). Because Plaintiff fails to identify a specific mark it owns that Defendants are "passing off" as their own or that Plaintiff is the exclusive provider of remanufactured ink cartridges in the United States, the Court concludes that Plaintiff's false designation of origin or approval under the Lanham Act claim and common-law unfair competition claim must be dismissed. *See, e .g., Spanx*, 2019 WL 4390564, at *14 (dismissing Lanham Act and common-law unfair competition claims because "the exhibits Plaintiff attached to the FAC reveal that Defendant uses clearly distinguishable advertising materials, packaging, and other brand recognition materials under the Spanx brand, even if the substance and style of those materials overlap with those Plaintiff uses for its Sleevey products"); *Fortune Mfg. Co. v. Zurn Indus., LLC*, 2011 WL 13220134, at *4 (C.D. Cal. May 23, 2011) (dismissing Lanham Act and common-law unfair competition claims because "[t]he FAC does not, for instance, allege that the ball valves manufactured by Fortune have Fortune's mark stamped on them, or that Zurn has installed counterfeit Fortune valves into its backflow prevention assemblies").

Accordingly, Defendants' Motion is granted with respect to Plaintiff's second and third claims, and those claims are dismissed.

### D.     Plaintiff's Negligence Claim Fails to Allege a Legal Duty

Defendants argue that Plaintiff cannot maintain its negligence claim because it fails to identify any legal duty Defendants owed to Plaintiff. To state a negligence claim under California law, a plaintiff must allege the duty of care that a defendant owed it and the legal basis for that duty. *See, e.g.*, 6 Witkin, *Summary of Cal. Law*, § 961 (11th ed. 2023) (explaining the two types of legal duties of care: (1) "the duty of a person to use ordinary care" and (2) "[a]n affirmative duty where the person occupies a particular relationship to others"); *Pirozzi v. Apple Inc.*, 913 F. Supp.

2d 840, 851 (N.D. Cal. 2012) (no general "duty to protect another from the conduct of third-parties").

In this case, Plaintiff alleges that Defendants have an affirmative duty to verify whether ink cartridges advertised as "remanufactured" by third parties on Amazon.com are, in fact, remanufactured. FAC, ¶ 117. Plaintiff argues that Defendants assumed this legal duty as a seller and distributor of products because Plaintiff's harm was foreseeable. However, foreseeability of harm, even if true, does not give rise to a duty of care. *Welte v. Wells Fargo Bank Nat'l Assoc.*, 189 F. Supp. 3d 965, 975 (C.D. Cal. 2016) (concluding that neither foreseeability of harm nor knowledge of danger can "create a legally cognizable special relationship giving rise to a legal duty to prevent harm"). In addition, a website operator, like Defendants, does not assume a duty of care merely by creating and operating its website. *See, e.g., Dyroff*, 934 F.3d at 1100-01 (holding that a website operator utilizing content neutral functions owed no duty of care); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) (holding that Google did not "owe a general duty to the public" by operating its Play Store). Indeed, "[n]o website could function" if content-neutral conduct gave rise to a legal duty of care. *Dyroff*, 934 F.3d at 1101. As a result, courts have repeatedly dismissed negligence claims against website operators similar to the claim alleged by Plaintiff for failure to identify a legally cognizable duty. *See, e.g., Kangaroo Manufac. Inc. v. Amazon.com Inc.*, 2019 WL 1280945, at *6 (D. Ariz. Mar. 20, 2019) (rejecting argument that Amazon was negligent because it had a duty to remove counterfeit products and holding that "[Amazon] was acting as an interactive computer service and the Plaintiff's claims arise out of the Defendant's course of action while acting as such").

Accordingly, Defendants' Motion is granted with respect to Plaintiff's sixth claim, and that claim is dismissed.

### E.     Leave to Amend Would Be Futile

The Ninth Circuit has instructed that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). However, "[a] district court may dismiss a complaint without leave to amend if amendment would be futile." *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation and quotation marks omitted); *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").

In this case, the Court concludes that it would be futile and, thus, unnecessary to provide Plaintiff another opportunity to amend the claims alleged in the FAC. *See, e.g., Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) ("The basic underlying facts have been alleged by plaintiffs and have been analyzed by the district court and us. We conclude that the plaintiffs cannot cure the basic flaw in their pleading. Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was

no need to prolong the litigation by permitting further amendment"); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that "futile amendments should not be permitted").  Plaintiff has had two opportunities to allege its claims against Defendants and although Plaintiff argues in its Opposition that it should be given the opportunity to amend its claims, the Court concludes that Plaintiff has failed to demonstrate that there are additional facts that it could allege in order to state a viable claim against Defendants. Because Defendants are immune under Section 230 from Plaintiff's claims, the Court concludes that Plaintiff will not be able to allege new or additional facts that will change Defendants' immunity. In addition, even if Defendants were not entitled to immunity under Section 230, Plaintiff's claims fail for additional reasons, and Plaintiff has failed to demonstrate that given the allegations contained in the FAC and the prevailing legal authority, Plaintiff will be able to allege new or additional facts that will allow it to successfully maintain a claim against Defendants.

      Accordingly, all the claims alleged in Plaintiff's FAC are dismissed without leave to amend.

## IV.    Conclusion

      For all the foregoing reasons, Defendants' Motion is **GRANTED**.  Plaintiff's FAC is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.

      IT IS SO ORDERED.